IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  22-cv-00154-LTB-STV

ALLISON MITCHELL,

      Plaintiff,

v.

SOUTHERN HEALTH PARTNERS, INC., a Delaware corporation,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Babcock, J.

This matter is before me on a Motion for Summary Judgment filed by Defendant Southern Health Partners, Inc. ("SHP"), seeking judgment in its favor on the whistleblower claims raised by its former employee, Plaintiff Allison Mitchell ("Plaintiff") pursuant to Colorado's Public Health Emergency Whistleblower Act ("PHEW"), Colorado Revised Statute §§8-14.4-101, *et seq.* [**Doc #32**] This motion has been fully briefed. [Doc #46 & #49] Oral arguments would not materially assist me in my determination. After consideration of the pleadings and attachments, and for the reasons stated, I GRANT IN PART and DENY IN PART Defendant SHP's motion as follows.

## I. FACTS

SHP contracts with various city and county jails to provide medical and dental care to their inmates. Plaintiff was hired by SHP as a Registered Nurse

("RN") at the La Plata County Jail on March 23, 2020, just as the COVID pandemic spread into Colorado. [Doc #32-2 pg. 1] Plaintiff's manager at SHP was Amber Fender, the Medical Team Administrator ("MTA"). Plaintiff's SHP co-workers at La Plata County Jail were Beth Danch, RN, and Jet Lewis, part-time Billing Clerk.

In June 2020, the Administrator of the La Plata County Jail, Captain Edward Aber of the La Plata County Sheriff's Office, reported to Stephanie Self, SHP's Vice President of Operations, that Ms. Fender had challenged Sheriff's Office policies related to mask wearing at the jail. [Doc #39-1 pg. 8] Shortly thereafter, Plaintiff raised her own concerns to Captain Aber that public health orders related to mask wearing were not being followed in the SHP offices located in the jail. Captain Aber testified that he "immediately" passed Plaintiff's concerns on to Ms. Fender. [Doc #39-1 pp. 8, 28-29][Doc #35-1 pp. 42-43]

On November 18, 2020, Plaintiff asked Ms. Fender to use an office where she could work alone, instead of sharing an office with Ms. Lewis, in order to reduce her exposure to COVID and to not be around others or have to wear a mask herself. [Doc #46-6] Plaintiff testified that she requested such space, during a private conversation with Ms. Fender, "to create a bit of social distancing" because she "was concerned about working in a small, unventilated office with co-workers that didn't wear masks or take precautions." [Doc #35-1 pp. 61-64, 89][Doc #32-3 pg. 2]

When Plaintiff arrived for her shift the next day, on November 19, 2020, Ms. Danch was wearing a face mask, face shield, and gloves, and she was curt and refused to make eye contact, which was unusual behavior. [Doc #35-1 pp. 84-88][Doc

#32-3 pg. 1][Doc #46-5] Ms. Danch admitted at her deposition that she wore the personal protective equipment to show the hypocrisy of the policies and the absurdity of Plaintiff's concerns. [Doc #37-1 pp. 22-24] When Plaintiff questioned Ms. Danch, they engaged in a terse exchange  [Doc #35-1 pg. 25][Doc #32-3 pg. 1] Ms. Danch later provided SHP with a written statement in which she complained that Plaintiff discussed her views about politics and police violence, which were "disturbing personally and not becoming of an SHP employee." Ms. Danch also complained that Plaintiff's confrontation about Ms. Danch's protective gear was inappropriately raised in front of a student. [Doc #32-3 Ex. D]

When Ms. Lewis came to work later that day, they also had an argument regarding masks and social distancing in the workplace. [Doc #35-1 pp. 64-65][Doc #32-3 pp.1-2] Plaintiff testified that Ms. Lewis was irate and aggressive toward Plaintiff because she "had to wear a fucking mask because of [her]." [Doc #35-1 pp. 64-66, 111-12, 134-35] After this interaction, Plaintiff called Ms. Fender to report what happened and avers that she "repeatedly raised my concerns" that Ms. Lewis and others "weren't wearing masks in the office." [Doc #46-10] Ms. Lewis subsequently provided a written statement to SHP in which she complained that Plaintiff discussed "inappropriate" topics, that she "brought up the use of masks" and asked to work in a separate office, and that Plaintiff accused her of creating a hostile work environment. Ms. Lewis indicated Plaintiff's actions were inappropriate, personal, and hurtful. [Doc #32-3 Ex. D]

As a result of this conflict, Ms. Fender changed the work schedule so that Ms. Lewis would not work at the same time as Plaintiff. [Doc #35-1 pg. 134][Doc #32-3 Ex. C & D][Doc #32-6 pp. 34-37] In addition, Plaintiff asked for and Ms. Fender offered to mediate the dispute in November, and again in December, but no mediation took place. [Doc #32-3 Ex. C][Doc #46-7][Doc #35-1 pp. 125-26][Doc #32-6 pp. 35-37]

Plaintiff testified that her working conditions deteriorated after November of 2020, as her co-workers were upset because they were forced to comply with public health orders, including wearing masks. Plaintiff maintains that she was ostracized by her co-workers, treated differently by Ms. Fender, and she was denied administrative assistance by Ms. Lewis. [Doc #46-5][Doc #46-7][Doc #46-10][Doc #35-1 pp. 105, 138, 149]

On December 26, 2020, Plaintiff sent Ms. Fender an email in which she documented the incidents with her co-workers in November 2020, and then indicated that:

> [a]fter our discussion, I felt like my concerns had been minimized specifically when you said that we should all take some time to cool down and not talk about this right away. By proposing to wait until the New Year, I felt that my concerns were being put on wait. I appreciate you trying to navigate a difficult situation by changing the schedule around, but that still did not address what happened. [Doc #46-7]

Plaintiff complained of a resulting hostile environment, including retaliatory treatment from her co-workers, and that:

> I do not feel it is fair that I had to deal with a hostile peer without any recourse taking place. I was afraid to even send you this written up report of the incident as I did not want to deal with the retaliation, but I also do not

want to deal with petty passive aggressiveness. . . . I feel even more afraid to
speak about things as it seems ever since I brought anything up the response
has been 'other people are hurt . . . and need some time' and trying to speak
about things directly with people has only seemed to lead to retaliation or
passive aggressiveness. I brought up my concerns regarding this incident
specifically because I had to come to work and deal with a very hostile
environment which I did not start and did not deserve. I should not be
ostracized based on my beliefs on COVID or requested to share a separate
office. [Doc #46-7]

On January 4, 2021, the La Plata County Sheriff revoked Ms. Fender's

security clearance following security camera footage that revealed she was not

wearing a mask, and her failure to report that she tested positive for COVID on

December 17, 2020. [Doc #46-5][Doc #46-16][[Doc #46-21] As a result, Ms. Fender

had to leave her position at the La Plata County Jail. [Doc #36 pp.15-16]

The same day, during an in-person meeting with Ms. Self who was

temporarily acting as the MTA at the La Plata County Jail, Plaintiff testified that

she asked to discuss the incidents in November, which she felt were unaddressed,

but Ms. Self responded that she "was going to have to let it go." [Doc #35-1 pg.

207][Doc #46-5 pg. 8] Directly following that meeting, Plaintiff emailed Katie Utz,

SHP's Vice President of Human Resources, informing her of Ms. Fender's security

clearance revocation and indicated that:

I have also filed a complaint to my manager [Ms. Fender] regarding an
incident with a co-worker [Ms. Lewis]. I sent it in an email to [Ms. Fender]
December 26th, 2020. I was wondering if that was received, as [Ms. Fender]
stated she was going to send it onto HR. No one has contacted me regarding
this report. I have more information I would like to share, but have been
unable to say anything due to fear of retaliation and hostility. [Doc #46-8]

Plaintiff avers that the additional information consisted of photos of fliers

and a white board in which anti-mask information was posted at the SHP office.

[Doc #46-10] Ms. Utz did not respond to Plaintiff's email. [Doc #41-1 pp. 13-14, 17-18][Doc #46-10] Instead, Ms. Utz testified that she had Ms. Self investigate the employee conflict at the La Plata County Jail. [Doc #41-1 pp.13-14] Ms. Self talked to the individual employees regarding the "turmoil in the unit," and told everyone not to discuss political topics at work. [Doc #44-1 pp. 11, 49][Doc #46-8 pg. 13] Ms. Self concluded that the conflict was based on personal opinions and political stances between the SHP employees, and that Ms. Lewis and Plaintiff would have to work separately. [Doc #44-1 pp. 49-53][Doc #41-1 pg. 14] Ms. Self considered the matter closed on January 8, 2021. [Doc #44-1 pp. 65-69]

Bridget Johnson was hired as the new MTA at La Plata County Jail. [Doc #35-1 pg. 149] Prior to starting, Ms. Johnson sent a welcome email to staff on February 19, 2021, outlining some changes she would be implementing. [Doc #46-9] Plaintiff responded, via an email the next day, that she believed that having Ms. Lewis schedule outside medical appointments for inmates would interfere with Plaintiff's ability to provide adequate medical care. [Doc #46-9] Ms. Johnson responded that "I was unaware there have been issues in the past, I would like to take this opportunity to offer you mediation, if you would like?" [Doc #32-5 Ex. M] Plaintiff responded that "I don't know if mediation is needed so much as recognition of the fact that the administrative assistant/billing clerk is stepping outside the scope of her role to intervene in the plan of care for a patient." [Doc #32-5 Ex. M]

Ms. Johnson also changed Plaintiff's work schedule. [Doc #32-5 Ex. M] [Doc #46-11] [Doc #46-12] In response to Plaintiff's inquiry about the change [Doc #46-11

pg. 2], Ms. Johnson indicated that Plaintiff's posted work schedule would not change and stated that if she was unable to work the days she was scheduled, she should submit a request to find coverage. With regard to her inability to work a newly scheduled day due to prior vacation plans, Ms. Johnson responded that Plaintiff did not ask to take time off for that day and "[g]iven that it is two weeks away, it will not be approved." [Doc #32-5 Ex. M] Plaintiff asked for reconsideration of her schedule request on the basis that it was reasonable under the circumstances, and noted that "I don't feel like I'm getting any accommodation from you or the rest of the team in this matter." [Doc #32-5 Ex. M][Doc #38-1 pg. 25] Ms. Johnson denied Plaintiff's request because her prior schedule was "not guaranteed," and indicated that she would need to use PTO and find coverage for her vacation day. [Doc #32-5 Ex. M] Ms. Johnson also stated that Ms. Lewis would remain in the process of scheduling outside medical appointments for inmates, and although they were currently not scheduled to work on the same days, "this may not always work for the team. Again, please consider mediation." [Doc #32-5 Ex. M][Doc #46-12][Doc #38-1 pg. 26]

On March 11, 2021, Ms. Danch submitted a written complaint to Ms. Johnson indicating that Plaintiff had improperly changed an inmate's medication. [Doc #32-4 Ex. F pg. 63] After an investigation, Ms. Johnson issued Plaintiff an "Employee Counseling Report for Violation/Review of Company Procedures" dated March 12, 2021, which indicated that Plaintiff went outside of SHP protocol when administering medication, and resulted in a three-day suspension without pay. [Doc

#46-13][Doc #35-1 pg. 165] Ms. Johnson also gave Plaintiff an "Employee Counseling Report for Unsatisfactory Work Performance/Needs Improvement" addressing her interactions with inmates who disagreed with the plan of care. [Doc #32-4 pp. 3-6] [Doc #46-13]

On April 1, 2021, the day she was to return to work after her suspension, Plaintiff resigned from her position at SHP. [Doc #32-4 pg. 13][Doc #46-15] In her resignation letter, Plaintiff stated that she was "being forced to resign from this position given the retaliation I have experienced after speaking out against this company's failure to follow the basic public health guidelines in our office. I also feel that a toxic environment was encouraged to those who did not fall in line with the non-COVID beliefs." She indicated that she felt it was the "intention of [SHP] to terminate me because of my complaints about the company's failure to follow or enforce even the most basic public health guidelines. I do not wish to resign, but I do not believe I have been left with any other viable option." [Doc #46-15]

In her affidavit, Plaintiff avers that at the time of her resignation it had become clear to her that the biases harbored by her co-workers and SHP were continuing to manifest, even through Ms. Johnson's hire. [Doc #46-10] She also indicates that she believed that she was no longer able to do her job effectively because Ms. Lewis continued to make her work life difficult, without any repercussion or correction from SHP. [Doc #46-10]

Plaintiff subsequently filed this lawsuit claiming that SHP violated §8-14.4-102 by: 1) discriminating against her when she raised concerns protected by PHEW;

8

2) constructively discharging her when she raised concerns protected by PHEW; 3) retaliating against her when she raised concerns and opposed unlawful practices protected by PHEW; 4) creating a hostile work environment for raising concerns protected by PHEW; and 5) implementing a workplace policy that limited or prevented disclosure of information about workplace health and safety practices protected by PHEW. [Doc #8] SHP responded by filing this motion seeking summary judgment at issue here. [Doc #32]

## II. SUMMARY JUDGMENT

Defendant brings this motion seeking dismissal of Plaintiff's claims raised in this lawsuit pursuant to Federal Rule of Civil Procedure 56. Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to Plaintiff as the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)(citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

On summary judgment, the moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Adler v. Wal-Mart, supra*, 144 F.3d at 670-71. Once the movant has met this initial burden, the burden shifts to the nonmoving party

"to set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. APPLICABLE LAW

The Colorado General Assembly enacted PHEW on July 11, 2020, to address employee rights in the workplace for conduct related to an employer's actions during a public health emergency. *See Littlewood v. Novartis Pharms. Corp.*, No. 21-CV-02559-CMA-SKC, 2022 WL 3081919 (D. Colo. Aug. 3, 2022)(unpublished)(citing H.B. 20-1415, 72nd Gen. Assemb., 2d Reg. Sess. (Colo. 2020)). As relevant here, PHEW protects an employee from adverse employment action because the employee reported a concern regarding a public health order as follows at §8-14.4-102(1):

> A principal shall not discriminate, take adverse action, or retaliate against any worker based on the worker, in good faith, raising any reasonable concern about workplace violations of government health or safety rules, or about an otherwise significant workplace threat to health or safety, to the principal, the principal's agent, other workers, a government agency, or the public if the principal controls the workplace conditions giving rise to the threat or violation.

In addition, PHEW protects an employee from adverse employment action because the employee opposed unlawful practices as follows at §8-14.4-102(4):

> A principal shall not discriminate, take adverse action, or retaliate against a worker based on the worker opposing any practice the worker reasonably believes is unlawful under this article 14.4 . . .

The Colorado Department of Labor and Employment subsequently passed regulations known as the Colorado Whistleblower, Anti-Retaliation, Non-Interference, and Notice-Giving Rules ("WARNING Rules"). 7 Colo. Code Regs.

§1103-11. The general purpose of the WARNING Rules is to exercise the authority of the Division of Labor Standards and Statistics to enforce and implement laws, including PHEW, that protect "against retaliation for, or interference with, the exercise of protected rights . . . ".  7 Colo. Code Regs. §1103-11 Rule 1.1; *see also* §8-14.4-108 (granting the Division the power to promulgate rules necessary to implement PHEW).

## IV. EXHAUSTION OF REMEDIES

As a threshold matter, I note that PHEW requires a plaintiff "exhaust administrative remedies pursuant to section 8-14.4-105 prior to bringing an action in court." §8-14.4-104(2). In her amended complaint, Plaintiff avers that she has exhausted her remedies by filing a complaint with the Colorado Department of Labor and Employment Division of Labor Standards and Statistics, and that it issued her a Notice of Right to Sue and Exhaustion of Administrative Remedies notice on October 22, 2021. [Doc #8 ¶¶13-16] SHP does not challenge Plaintiff's assertion that all administrative remedies and conditions precedent to the institution of this lawsuit have been fulfilled. [Doc #8 ¶17]

## V. JURISDICTION

The parties agree that this Court has diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1332. [Doc #52]

## VI. HOSTILE WORK ENVIRONMENT

I first address Plaintiff's "Hostile Work Environment and Harassment" claim, set forth in her Fourth Cause of Action, in which she alleges that she was forced to

work in an environment in which her co-workers ignored and mocked public health orders, and were hostile to anyone who wished to comply with such orders. She also alleged that SHP knew of the conduct but did not exercise reasonable care to prevent such hostile work environment, resulting in injuries and damages. [Doc #8 ¶¶129-136]

In this motion SHP argues that PHEW does not provide for a hostile work environment claim. Rather, the statutory and regulatory scheme of PHEW, which is a whistleblower law, requires an employee to engage in protected activity. *See* §8-14.4-102(1). Plaintiff, in response, does not argue that her hostile work environment claim can stand on its own under PHEW, but rather asserts that her claim constitutes evidence of the discrimination and retaliation she was subjected to while working for SHP. Specifically, she maintains that the alleged hostile work environment is a manifestation of the discrimination and retaliation directed at her after she raised concerns of health and safety violations and/or opposed unlawful practices, in the SHP workplace. *See* 7 Colo. Code Regs. §1103-11 Rule 2.11.2 (providing that "[r]etaliation means, and is and is synonymous with, discrimination based on or for protected activity, and it encompasses any act (whether an affirmative act, an omission, or a statement) that is intended to, and could, deter a reasonable person from engaging in, or impose consequences for, protected activity").

Based on this, I agree with SHP that a stand-alone claim for hostile work environment is not provided by PHEW. Rather, the statutory and regulatory

scheme of PHEW, as a whistleblower law, requires an employee to engage in a protected activity of either raising a reasonable concern, or opposing a violation of the law, in order to bring a claim. To the extent evidence supports a finding that Plaintiff was subject to a hostile work environment at SHP, such evidence relates to whether she was subjected to discrimination or retaliation for expressing her concerns, which is the improper conduct protected by PHEW. Accordingly, her stand-alone Fourth Cause of Action for stand-alone hostile work environment under PHEW must be dismissed as not viable.

## VII. CONSTRUCTIVE DISCHARGE CLAIM

I next address SHP's argument that Plaintiff cannot, as a matter of law, meet the requirements of her "Adverse Action of Constructive Discharge" claim, as set forth in her Second Cause of Action. Plaintiff asserts that SHP created discriminatory, difficult, and unbearable working conditions to the extent that a reasonable person in her position would have felt compelled to resign. She maintains that SHP's actions were intentional, willful, malicious, and done with reckless disregard to Plaintiff's right to be free from discrimination for raising concerns protected by PHEW, resulting in economic and emotional damages. [Doc #8 ¶¶115-120]

SHP contends that she cannot establish a claim for constructive discharge because SHP's actions were not objectively intolerable. "To prove a constructive discharge, a plaintiff must present sufficient evidence establishing deliberate action on the part of an employer which makes or allows an employee's working conditions

to become so difficult or intolerable that the employee has no other choice but to resign." *Montemayor v. Jacor Commc'ns, Inc.*, 64 P.3d 916, 921 (Colo. App. 2002)(quoting *Wilson v. Bd. of County Comm'rs*, 703 P.2d 1257, 1259 (Colo. 1985)); *see also E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 805 (10th Cir. 2007).

Plaintiff again maintains that she is not raising a separate claim, but rather she was constructively discharged and, thus, SHP subjected her to an adverse employment action. She asserts such action constitutes evidence of discrimination and/or retaliation for raising concerns about, or opposing unlawful practices related to, SHP's workplace violations of government health and safety rules in violation of PHEW. While Plaintiff argues that the circumstances of her employment after she raised concerns culminated in her constructive discharge, the underlying basis of her claim against SHP is that she faced unlawful acts of discrimination and retaliation from her co-workers and supervisors. Thus, to the extent that Plaintiff is asserting a stand-alone claim for constructive discharge in her Second Cause of Action, I again dismiss this claim.

## VIII. DISCRIMINATION/RELATATION CLAIMS

Plaintiff's claims of Discrimination under PHEW (set forth in her First Cause of Action) and Retaliation under PHEW (set forth in her Third Cause of Action) make up the heart of this case. Plaintiff alleges that SHP discriminated and retaliated against her for raising concerns related to health and safety in the workplace pursuant to §8-14.4-102(1), which provides that a worker can make out a claim, as related to the circumstances alleged here, by proving that:

1) SHP (as the principal) discriminated, took adverse action, or retaliated against Plaintiff;

2) such action was "based on" Plaintiff's act of raising, in good faith, any reasonable concern about: "workplace violations of government health or safety rules" and/or "an otherwise significant workplace threat to health or safety;"

3) the concern of violations or threats was communicated to: SHP, its agent, or to other workers; and

4) SHP controlled the workplace conditions giving rise to the threat or violation.

In addition, Plaintiff alleges that SHP retaliated against her for "opposing any practice" under PHEW, pursuant to §8-14.4-102(4), which prohibits discrimination, adverse action, or retaliation against a worker for "opposing any practice the worker reasonably believes to be unlawful under" PHEW.  Retaliation is defined in the WARNING Rules as "discrimination based on or for protected activity, and it encompasses any act (whether an affirmative act, an omission, or a statement) that is intended to, and could, deter a reasonable person from engaging in, or impose consequences for, protected activity."  7 Colo. Code Regs. §1103-11 Rule 2.11.2.

My research reveals that the Colorado Supreme Court has not yet interpreted PHEW, and there are no other relevant decisions applying PHEW as of the date of this order. *See generally Littlewood v. Novartis, supra* (declining to exercise supplemental federal jurisdiction over the plaintiff's PHEW claim of alleged unlawful termination resulting from her raising concerns about her employer's response to the COVID pandemic, on the basis that the issue was "novel"). When no decision of a state's highest court has addressed an issue of that state's law, a

15

federal court confronted with that issue "must predict how [the State's] highest court would rule." *FDIC v. Schuchmann*, 235 F.3d 1217, 1225 (10th Cir. 2000); *see also United States v. Badger*, 818 F.3d 563, 569 (10th Cir. 2016)(citing *Daitom Inc. v. Pennwalt Corp.,* 741 F.2d 1569, 1574 (10th Cir. 1984)(noting that to make this prediction, a federal court "must follow any intermediate state court decision unless other authority convinces us that the state supreme court would decide otherwise").

In *Taylor v. Regents of University of Colorado*, 179 P.3d 246, 250 (Colo. App. 2007), *cert. denied*, 2008WL698982 (Mar. 17, 2008) a division of the Colorado Court of Appeals reviewed a plaintiff's claim that his employers unlawfully retaliated against him in violation of the Colorado State Employee Protection Act, Colorado Revised Statute §§24-50.5-101, *et. seq.* That Act is a whistleblower statute that provides protection for state employees by prohibiting disciplinary measures or harassment for the disclosure of information on actions of state agencies that are not in the public interest. *See* Colo. Rev. Stat. §24-50.5-103(1). The Court in *Taylor v. Regents*, *supra*, found that in *Ward v. Industrial Commission*, 699 P.2d 960, 968 (Colo. 1985), the Colorado Supreme Court stated that examination of whistleblower violations "should employ the same allocation of the burden of proof found in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)." 179 P.3d at 248. As a result, the court upheld jury instructions which required the plaintiff asserting that she was unlawfully retaliated against by her employer for whistleblowing to prove that her disclosures were protected under the applicable statute. *Id.* In order to make out her claim, the

plaintiff was also required to prove that the "disclosures were 'a substantial or motivating factor' for the disciplinary action taken against him or her." *Id.* (quoting *Ward v. Indus., supra*, 699 P.2d at 968). Finally, if the plaintiff proved her case, the jury was instructed that the defendant then had an opportunity to prove, by a preponderance of the evidence, that it would have made the same decision in the absence of the plaintiff's disclosures. *Taylor v. Regents, supra*, 176 P.3d at 250 (citing *Ward v. Indus., supra*, 699 P.2d at 968; *cf. Mt. Healthy v. Doyle*, 429 U.S. at 287).

## A. Plaintiff's Protected Activity

In applying this framework, I first address whether Plaintiff provides evidence of whistleblower discrimination and retaliation by demonstrating that she engaged in activity that is protected by PHEW. As relevant here, a "protected activity" is defined in the WARNING Rules as acts: (A) asserting, seeking, or exercising any right or remedy; (B) opposing a possible or perceived violation; . . . and/or (D) engaging in any other activity authorized or protected thereby." 7 Colo. Code Regs. §1103-11 Rule 2.11.1. Additionally, as discussed above, a worker is "protected against retaliation if the worker's belief as to a violation or threat is, whether or not correct, was 'reasonable' and 'in good faith'." 7 Colo. Code Regs. §1103-11 Rule 5.1 (citing Colo. Rev. Stat. §8-14.4-102(1)). Finally, "the worker, whether or not citing a specific rule or guideline, must state what action, condition, or situation they believe constitutes a qualifying violation of a rule regarding, or

significant threat to, workplace health or safety." 7 Colo. Code Regs. §1103-11 Rule 5.1.2.

SHP argues that Plaintiff did not engage in protected activity because she fails to provide any evidence that she raised a concern or opposed any practice "in a manner that would trigger the protections indicated in [PHEW]." [Doc # 49 pg. 2] Plaintiff, in response, argues that she engaged in numerous acts from which a jury could find she engaged in protected activity. Specifically, Plaintiff asserts that she raised reasonable concerns or opposed practices regarding workplace violations of government health orders at the following times:

1. In the summer of 2020 she raised a concern when she told her manager, Ms. Fender, that she was experiencing harassment from Ms. Lewis and was concerned by Ms. Danch's "delusional theories" about COVID being a hoax. [Doc #35-1 pp. 100-03]

2. At the end of the summer of 2020, Plaintiff informed Captain Aber, the Administrator of the La Plata County Jail, that SHP employees were not wearing masks or social distancing at work. Captain Abner indicated he would (and then did) pass this concern along to Plaintiff's manager, Ms. Fender. [Doc #39-1 pg. 8][Doc #35-1 pg. 42]

3. On November 18, 2020, Plaintiff contacted Ms. Fender and raised a concern that her co-workers refused to wear masks in the SHP offices, and because Ms. Lewis sat less than 6 feet away from her, she asked to use another office where she could also not wear a mask. [Doc #36-1 pp. 86-87][Doc #35-1 pp. 42-43, 48-49, 61-62, 89][Doc #46-6][Doc #46-10] [Doc #37-1 pg. 80]

4. On November 19, 2020, the day after she asked for office space away from Ms. Lewis, Plaintiff reported to Ms. Fender that she was subjected to retaliation from her co-workers for her request to use another office. [Doc #46-10] And Ms. Fender was in "constant contact" with Ms. Self, the VP of Operations at SHP, during that time. [Doc # 36-1 pg. 138]

5. On December 26, 2020, after SHP did nothing to respond or address the fact that her co-workers were not wearing masks and retaliating against her for raising the concern, Plaintiff submitted a written complaint to Ms. Fender via

email. [Doc #46-7][Doc #44-1 pp. 42-43][Doc #36-1 pp.130-131] She complained that "I should not be ostracized based on my beliefs on COVID or requests to share a separate office" and "[r]egardless of what any person believes the state mandate and jail policy is that every person is supposed to wear a mask when indoors, sharing an office, and around other people" and "I am not sure how people can act in retaliation when I am just trying to follow policy." [Doc #46-7]

6. On January 4, 2021, Plaintiff sent an email to Ms. Utz, the VP of Human Resources at SHP, asking for a response to her written complaint, and indicating "I have more information I would like to share, but have been unable to say anything due to fear of retaliation and hostility." [Doc #46-8] Plaintiff did not get a response to this email, and Ms. Self declared the investigation closed on January 8, 2021. [Doc #41-1 pg. 17][Doc #46-10][Doc # 46-4][Doc #46-8]Doc #43-1 pg. 69]

7. The same day, and again on January 13, 2021, Plaintiff spoke with Ms. Self about her complaint, and Ms. Self instructed the employees to stop discussing opinions on controversial subjects and told Plaintiff to "let it go." [Doc #46-8][Doc #35-1 pp. 147, 207][Doc #44-1 pg. 68][Doc #46-5]

SHP argues that Plaintiff's various communications failed to state what action, condition, or situation she believed constituted a violation of a public health order, and/or that SHP did not control the workplace conditions that gave rise to the violation. For example, SHP asserts that Plaintiff's written complaint, dated December 26, 2020, only indicates that she asked her manager to be moved to an unshared office so that she did not have to wear a mask. As such, SHP argues that her request could not be reasonably interpreted that she was raising a concern or opposed practices related to a workplace violation of a public health order. As to her other communications, SHP maintains that they were not raised to SHP (i.e. they were raised to her co-workers or to Captain Aber) or that they related to circumstances outside of SHP's control (i.e. complaints about non-SHP employees). [See Doc #49 pp. 5-9]

However, I conclude that Plaintiff has provided evidence that, when viewed in her favor, demonstrates that she engaged in activity that is protected by PHEW. Specifically, her written complaint sent via email to her manager, dated December 26, 2020, indicated that "[r]egardless of what any person believes the state mandate and jail policy is that every person is supposed to wear a mask when indoors, sharing an office, and around other people." [Doc #46-7] This grievance clearly states the situation Plaintiff believed constituted a qualifying violation of a rule regarding (or significant threat to) workplace health or safety. 7 Colo. Code Regs. §1103-11 Rule 5.1.2. And, although SHP does not challenge it, Plaintiff has also provided ample evidence, when viewed in her favor, that her belief as to a violation was both reasonable and in good faith. Colo. Rev. Stat. §8-14.4-102(1); *see also* 7 Colo. Code Regs. §1103-11 Rule 5.1.  As such, this complaint, standing alone, is sufficient for a fact finder to conclude that Plaintiff engaged in the protected activity of "opposing a possible or perceived violation." 7 Colo. Code Regs. §1103-11 Rule 2.11.1(B).

## B. Causation

SHP also argues that Plaintiff's claims for discrimination and retaliation under PHEW should be dismissed because she cannot show causation between her protected activities, and the adverse action of her suspension.

The WARNING Rules provide that a complaint is proved when "unlawful retaliation or discrimination was a motivating factor for the complained-of practice." 7 Colo. Code Regs. §1103-11 Rule 3.4(B); *see also Taylor v. Regents, supra,* 179 P.3d

at 250 (providing a plaintiff's claim for a violation of a whistleblower statute requires evidence that his or her acts were "a substantial or motivating factor" for the disciplinary or retaliatory action taken against him or her).

Plaintiff has provided evidence that she repeatedly communicated concerns and/or opposed practices to SHP – first through Captain Aber who reported to her manager, then in numerous ways to her manager, Ms. Fender, and finally to upper management, including the VP of Human Resources at SHP – beginning in the summer of 2020 through mid-January of 2021. She was suspended at the end of March 2021. While I agree with SHP that there is no direct evidence that her reports were a reason, in part, for her suspension and constructive discharge, I find that a jury could conclude that they were a motivating factor under these circumstances. Moreover, Plaintiff has alleged numerous other adverse actions from which a jury could find that her various reported concerns and/or opposition to unlawful practices were a motivating factor in the workplace actions made against her; for example, an unchecked hostile work environment (in the form of ignoring her concerns about masking in the office and failing to address her co-workers' actions), a discriminatory response to her requested work schedule by Ms. Johnson, and, ultimately, constructive discharge. SHP argues that Plaintiff cannot demonstrate constructive discharge as an adverse action in support of her retaliation and discrimination claims. However, I conclude that she has provided some evidence that, when viewed in her favor, a jury could find that her working conditions were objectively intolerable. *See generally Sandoval v. City of Boulder,*

*Colo.,* 388 F.3d 1312, 1326 (10th Cir. 2004)(applying the standard, on summary judgment, of whether evidence produced by the plaintiff could support a finding that the conditions of employment were objectively intolerable, and could "lead a rational juror to conclude that a reasonable person would have felt compelled to resign"); *Montemayor v. Jacor, supra,* 64 P.3d at 921 (noting that cumulative events can cause working conditions to deteriorate to an intolerable level).

As a result, I agree with Plaintiff that she has provided evidence that raising her concerns and/or opposing unlawful practices related to health and safety in the workplace based on public health orders where a substantial or motiving factor in various resulting adverse employment actions by SHP.

## C. Other Legitimate Reasons

Finally, even if Plaintiff is able to produce evidence to support her retaliation and discrimination claims under PHEW, as I have found, SHP argues that it is entitled to summary judgment in its favor because it has provided evidence that there were other legitimate reasons for its decision to suspend Plaintiff.

The WARNING Rules provide that if a complainant proves unlawful retaliation or discrimination, the respondent is able to prove that the complained-of practice "would have occurred for another lawful reason" and, in such case, the Division shall not award various remedies such as reinstatement and back pay. 7 Colo. Code Regs. §1103-11 Rule 3.4(B). As discussed above, the court in *Taylor v. Regents, supra*, upheld a jury instruction which gave the defendant the opportunity to prove, by a preponderance of the evidence, that it would have made the same

decision in the absence of the plaintiff's whistleblower disclosures. 176 P.3d at 250. SHP argues that Plaintiff was suspended for a legitimate reason which would have occurred without her reporting concerns or opposing practices related to workplace violations of public health orders. It contends that the legitimate reason for her suspension was that Plaintiff changed an inmate's medication in violation of SHP's protocol for dental treatment. [Doc #32-4 pp. 1-2][Doc #46-13]

While I agree that SHP has provided sufficient evidence of a legitimate reason for Plaintiff's suspension, Plaintiff has provided evidence that this reason was pretextual. Specifically, she argues that the reason for her suspension was not fully investigated, in that she was never asked if she changed the medication based on a conversation with her husband, a dentist, as was alleged; rather, she misread the protocol. [Doc #35-1 pp. 45-49] In addition, Plaintiff has provided evidence that the discipline she received (a three-day suspension for a first-time documented offense) was excessive as compared to discipline Ms. Danch received for similar infractions; most notably, Ms. Danch went outside of protocol by giving an inmate a sleeping pill and was only counseled, not suspended. [Doc #37-1 ppg. 32-33][Doc #38-1 pp. 22-23][Doc #49-1]

And, more importantly, I again note that Plaintiff has alleged and provided evidence from which a jury could find that she incurred retaliation and discrimination by SHP based on the motivating factor of raising concerns or opposing practices related to workplace violations of public health orders for adverse acts *other than* her suspension.

23

As such, I conclude that Plaintiff has provided evidence that, when viewed in her favor, is sufficient to establish her claims for Discrimination (set forth in her First Cause of Action) and for Retaliation (set forth in her Third Cause of Action) under PHEW, precluding summary judgment in SHP's favor.

## IX.  SHP POLICY

Finally, I address Plaintiff's claim, set forth in her Fifth Cause of Action, that SHP violated PHEW when it "enforced a policy that prevented or limited plaintiff's disclosure of information about workplace health and safety concerns." [Doc #8 ¶139] She specifically asserts that she raised her concerns and opposed unlawful practices up through SHP's chain of command and was initially put off and then told that she was going to have to "let it go" by Ms. Self, a "regional manager" for SHP. [Doc #8 ¶139] And she alleges that "[b]y retaliating against and constructively discharging Plaintiff, [SHP] made this policy clear to all of its employees at the La Plata County Jail that concerns about workplace health and safety related to a public health emergency were not welcomed or permitted." [Doc #8 ¶139]

PHEW prohibits an employer from enforcing a policy that would limit or prevent disclosure of information about workplace health and safety practices. Colo. Rev. Stat. §8-14.4-102(2)(a)(prohibiting a principal from requiring a worker to "abide by a workplace policy that would limit or prevent such disclosures").

SHP argues that its policies comported with public health orders [Doc #32-2], and that procedures were in place to report violations, including a formal whistleblower protection policy and a process for reporting. [Doc #32-7 pg. 7]

Plaintiff does not contest that SHP had a formal policy, but instead argues that it enforced an informal policy of limiting her ability to raise concerns via: Ms. Fender's admittedly "liberal view of compliance with public health orders;" the unaddressed retribution from her co-workers; the lack of investigation of her numerous complaints; and Ms. Self's act of telling Plaintiff to "let it go." I agree and, in so doing, reject SHP's assertion that its enforced informal policy does not violate PHEW because other ways existed to report concerns via SHP formal procedures.

When the evidence is viewed in favor of Plaintiff, a jury could find that that SHP had an informal policy of discouraging the reporting of violations of public health orders in violation of PHEW's prohibition against requiring workers to abide by a workplace policy that would limit or prevent the disclosure of information about workplace health and safety practices pursuant to §8-14.4-102(2)(a).


ACCORDINGLY, I GRANT IN PART and DENY IN PART the Motion for Summary Judgment filed by Defendant Southern Health Partners, Inc. [**Doc #32**] as follows:

I GRANT the motion as to: 1) Plaintiff's Fourth Cause of Action for Hostile Work Environment and Harassment in violation of PHEW; and 2) Plaintiff's Second Cause of Action for Adverse Action of Constructive Discharge in violation of PHEW. As a result, these causes of action are DISMISSED WITH PREJUDICE.

I DENY the motion as to: 1) Plaintiff's First Cause of Action for Discrimination in violation of PHEW; 2) Plaintiff's Third Cause of Action for

Retaliation in violation of PHEW; and 3) Plaintiff's Fifth Cause of Action for

Workplace Policy that Limited or Prevented Disclosures in violation of PHEW.


Dated: October 12, 2023 in Denver, Colorado.


BY THE COURT:

s/Lewis T. Babcock

LEWIS T. BABCOCK, JUDGE